UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO: 8:09-CR-251-T-30MAP

DEMETRIUM SHAW
_____/

**ORDER**

This cause comes on for consideration of Defendant's <u>pro se</u> Motion for New Trial (D-225), the Government's response in opposition (D-229), and Defendant's reply (D-230).

By way of background, on October 29, 2009, a jury found Defendant guilty of conspiracy to possess with the intent to distribute 50 grams or more of cocaine base and possession with the intent to distribute 50 grams or more of cocaine base. Prior to sentencing, Defendant twice sought a new trial based on what he alleged to be "newly discovered evidence" which he claimed demonstrated that Government witnesses James Oner and Eddie Light falsely testified at trial. By order dated February 26, 2010, the Court denied without prejudice Defendant's first motion for new trial. By order dated May 17, 2010, the Court denied the second motion for new trial without an evidentiary hearing.

On October 28, 2010, the Court sentenced Defendant to a term

of imprisonment of 240 months. Defendant appealed his conviction and sentence. While that appeal currently remains pending, on August 15, 2011, the Government filed a Concession of Error and requested the Eleventh Circuit to vacate Defendant's sentence and remand for resentencing under the Fair Sentencing Act.

In the meantime, Defendant filed his pro se motion seeking a new trial based on what he again claims to be "newly discovered evidence." Defendant submits nearly identical affidavits from Tahonie Joyce, Quinton Dixson, and Lymakel Johnson.[1] Each of the affiants state that they have reviewed the trial transcripts and that, contrary to the testimony of Eddie Light, they never observed Light and Defendant together; they never observed Light to have enough money to purchase the amount of drugs he claimed he had purchased; they never knew Light to be a large scaled distributor of drugs; and they never saw Light purchase drugs from Defendant nor observed Joyce accompany Light or conduct a drug transaction with Light or Defendant. They each declare Light's testimony as false and misleading and claim that, prior to and during the trial, they were not interested in testifying in the case and were evading law enforcement, Defendant and the attorneys associated with the case.

Defendant also submits the affidavit of Kerry Strong who

---

[1] None of the affidavits have original signatures. Rather, Defendant submitted copies.

states he has reviewed the trial transcripts and that, contrary to the testimony of James Oner, he never (1) accompanied Oner to Defendant's residence to purchase crack cocaine; (2) purchased crack cocaine from Defendant; (3) advised Oner that he purchased or received crack cocaine from Defendant; (4) accompanied Defendant to Oner's trap house;" nor (5) conducted a drug transaction with Defendant and Oner.[2] He states he cannot corroborate Oner's testimony and that prior to and during the trial he was a fugitive from the law and was evading law enforcement, Defendant and the attorneys related to the case.

Defendant claims the affidavits constitute new evidence that demonstrates that his conviction was obtained through the use of perjured testimony. The Government responds that Defendant fails to show that the alleged new evidence could not have been presented at trial with the exercise of due diligence. The Government continues that the evidence is only impeaching, at best, and that Defendant fails to demonstrate that the evidence would have altered the verdict in light of the strong evidence presented at trial. The Government also contends that Defendant is not entitled to an evidentiary hearing.

Defendant replies that he was unaware of "the powers of the Government in locating all of these witnesses, taking custody of

---

[2] This affidavit also does not have an original signature. Rather it is a copy.

these witnesses, and simultaneously compelling these witnesses to testify." (D-230, p. 2.) He further argues that the Government should have known that the testify of Oner and Light was false in light of the Government's investigations and debriefings that led to the prosecutions of Tahonie Joyce and Quinton Dixson.

## Discussion

In order to obtain a new trial based on newly discovered evidence, Defendant must show the following: 1) the evidence was discovered after the trial; (2) Defendant exercised due diligence in discovering the evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) based on the evidence a new trial would probably produce a different result. United States v. Schlei, 122 F.3d 944, 991 (11th Cir. 1997). "The failure to satisfy any one of these elements is fatal to a motion for a new trial." United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995). Furthermore, unsubstantiated accusations and allegations do not establish the foregoing elements. United States v. Elso, 364 Fed. Appx. 595, 597 (11th Cir. 2010) (per curiam), cert. denied, 131 S.Ct. 1550 (2011). Motions for new trial based on newly discovered evidence are highly disfavored. United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006). A motion for new trial should be granted only with "great caution." Id.

With the foregoing standard in mind, the Court turns to the

evidence submitted by Defendant in favor of his most recent motion for new trial.

I. Affidavit of Tahonie Joyce

In reviewing the purported affidavit of Tahonie Joyce, the Court finds it is suspect for multiple reasons. First, last year, Defendant advised the Court in his Amended Motion for New Trial that Joyce "was not interested in signing affidavits." (D-136, p. 13.) Second, the affidavit provides that, prior to and during Defendant's trial, Joyce was "not interested in testifying in this case, and was evading law enforcement officers, Defendant Shaw, and attorneys" related to Defendant's case. Joyce was, however, incarcerated at Coleman FCI since May 1, 2007. Additionally, as the Court previously noted in its May 17, 2010 order, defense counsel advised the Court during Defendant's trial that Joyce was serving a 15-year sentence in federal prison. Defense counsel further advised that Joyce was actually <u>working with</u> law enforcement in an attempt to reduce his sentence rather than evading law enforcement. (D-152, p. 16, citing D-134, p. 16-17, emphasis added.) Defense counsel also advised at that time that Joyce still communicated with defense counsel. (D-134, p. 16.)

Third, the Court has reviewed the signatures of Tahonie Joyce included on various documents in his own criminal file, Case No. 8:06-CR-233-T-26MAP. These documents include his October 26, 2006 Order of Release (8:06-CR-233-T-26MAP, D-17, p.5), Appearance Bond

(8:06-CR-233-T-26MAP, D-18, p. 2-3), Agreement to Forfeit Property (8:06-CR-233-T-26MAP, D-19, p.2), Waiver of Appearance (8:06-CR-233-T-26MAP, D-26), December 2006 Plea Agreement (8:06-CR-233-T-26MAP, D-42, p. 16), and a pro se motion to reduce sentence under Amendment 706 (8:06-CR-233-T-26MAP, D-55, p. 16-17). After comparing Joyce's signature on those documents to the signature on the July 18 affidavit[3], the signature on the affidavit does not appear to be substantially similar to Joyce's signature on the other documents.

Joyce's affidavit does not include a certification under penalty of perjury that the statements in the affidavit are true and correct, and thus does not meet the requirements of 28 U.S.C. § 1746. Joyce's affidavit was notarized by Teresa D. Klag, a notary apparently unrelated to Coleman FCI, however, the notary jurat does not comply with Fla. Stat. §§ 117.05(4)(f) and (5). Specifically, the jurat does not include the type of identification, either based on personal knowledge or the specific type of identification the notary is relying upon in identifying the signer of the affidavit. See id. This alone makes the affidavit invalid.

In any event, even accepting the affidavit at face value, Defendant would not be entitled to a new trial. The Court

---

[3] The affidavit does not include the year in which is was allegedly sworn and subscribed.

previously found in its May 17, 2010 order that Defendant had failed to demonstrate that Joyce's then proffer could not have been discovered using due diligence. (D-152, p. 16-17.) He now fails to demonstrate that he could not have previously obtained Joyce's affidavit using due diligence. As the Court previously noted, defense counsel was aware at the time of trial that Joyce was incarcerated. He told that Court that he thought it appropriate for him to contact Joyce to determine whether he had information material to Defendant's case. The Court responded that he could "follow-through on it to whatever degree and whatever measure you feel appropriate." (D-134, p. 16-17.) As was true on May 17, 2010, there is no evidence that Defendant actually attempted to contact Joyce during the trial. He did not request the Court to subpoena Joyce to testify at trial nor did he request a continuance in order to contact Joyce and determine if his testimony would have been helpful to the defense. Even when Defendant, through counsel contacted Joyce after trial, Joyce was "not interested" in signing affidavits. Defendant has failed to demonstrate this evidence could not have been discovered using due diligence.

Additionally, Joyce's statement would serve only to impeach the testimony of Eddie Light. Defendant again fails to show Joyce's testimony would have likely produced a different result when faced with the evidence presented by the Government, which the Court previously set forth in detail in its May 17, 2010 order.

(D-152, p. 12-14.)

II. Affidavits of Dixson, Johnson and Strong

With regard to the affidavits of Dixson[4], Johnson and Strong, none of the affiants provide any explanation how it is that the affiants came to be acquainted with Defendant, Eddie Light or James Oner.

While Quinton Dixson is also a federal inmate incarcerated at Coleman FCI, his affidavit was notarized by Teresa D. Klag on July 18 (no year provided), and suffers from the same legal insufficiencies as Joyce's purported affidavit. In this regard, the notary jurat does not comply with Fla. Stat. §§ 117.05(4)(f) and (5) in that it does not include the type of identification the notary relied on in identifying Dixson. Dixson's affidavit, like that of Joyce, does not constitute an unsworn declaration as it fails to include a certification under penalty of perjury that the statements in the affidavit are true and correct, and, thus, does not meet the requirements of § 1746.

With regard to Johnson's affidavit, the notary failed to complete the portion of the jurat that is to include the exact date of the notarial act. Fla. Stat. § 117.05(4)(d). Moreover, both affidavits fail to include a sufficient notary jurat that explains the type of identification the notary relied on in identifying the

---

[4] While the affiant's name is spelled throughout that affidavit as "Dixon," the affiant's signature reveals his last name is "Dixson."

8

signatures. See Fla. Stat. §§ 117.05(4)(f) and (5). As such, these affidavits are technically insufficient as well.

Defendant has made no attempt to show due diligence in discovering this evidence. Defendant was apparently aware of all of these witnesses prior to his trial. Specifically, he states that they previously refused to speak with his counsel and also refused to testify on Defendant's behalf if called as a witness. Defendant, however, made no attempt to have the witnesses subpoenaed to testify. Defendant has not demonstrated that the evidence is not merely impeaching. Nor has he demonstrated that the evidence would likely produce a different result if it were presented at a new trial.

III. Alleged False Testimony

Finally, Defendant is not entitled to a new trial based on the alleged false testimony of Light and Oner. A defendant is entitled to a new trial where the government's case includes false testimony, the government knew or should have known of its falsity, and "there was any reasonable likelihood that the false testimony would have affected the judgment of the jury." United States v. Antone, 603 F.2d 566, 569 (5th Cir. 1979). Here, affidavits do not prove the testimony of either Light or Oner to be false; they merely contradict the testimony elicited from Light and Oner. There is no evidence that the Government intentionally or negligently used false testimony. While Defendant contends that

the Government knew or should have known, based on other investigations and debriefings, that the testimony was false, he presents no evidence in support of his contention.

IV. EVIDENTIARY HEARING

It is not necessary to hold an evidentiary hearing when the resolution of a motion for new trial is clear. <u>United States v. Jernigan</u>, 341 F.3d 1273, 1289 (11th Cir. 2003). The Undersigned was the trial judge in this case, and a district court's familiarity with a case can allow the court to rule on a motion for a new trial based on new evidence without holding an evidentiary hearing. <u>See</u> <u>Schlei</u>, 122 F.3d at 994. The Court finds no evidentiary hearing is warranted in this case.

It is therefore ORDERED that:

1) Defendant's Motion for New Trial (D-225) is DENIED.

DONE AND ORDERED in Tampa, Florida, this 7th day of October, 2011.

WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT